Argued and submitted April 21, affirmed May 25, 1994

Michael LECKIE,
*Appellant,*
*and*

Janet VOORHIES,
*Respondent.*

(60-92-06326; CA A79785)

875 P2d 521

Richard W. Clark argued the cause and filed the briefs for appellant.

Mark A. Johnson argued the cause and filed the brief for respondent.

Katherine Tennyson, Tennyson Winemiller & LaVallee, Karen M. McGaffey, and Bogle & Gates filed a brief *amici curiae* for The National Center for Lesbian Rights, Gay and Lesbian Advocates and Defenders, and Lambda Legal Defense and Education Fund.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Petitioner, a sperm donor in an artificial insemination arrangement, appeals the circuit court's entry of summary judgment against his filiation claim under ORS 109.125. We affirm.

The summary judgment record establishes the following uncontroverted facts: On August 21, 1987, petitioner, as "donor," entered into an Agreement with respondent and her partner as "recipients." That Agreement included the following pertinent provisions:

"5.     Each party acknowledges and agrees that DONOR provided his semen for purposes of said artificial insemination, and did so with the clear understanding that he would not demand, request, or compel any guardianship or custody with any child born from the artificial insemination procedure. Further, DONOR acknowledges that he fully understood that he would have no paternal rights whatsoever with said child.

"a.     RECIPIENTS agrees [*sic*] to allow DONOR limited visitation rights at the convenience of the RECIPIENTS, specifics of visitation to be worked out each year with verbal or written agreement * * *.

"* * * * *

"6.     Each party acknowledges and agrees that RECIPIENTS has [*sic*] relinquished any and all rights that she [*sic*] might otherwise have to hold DONOR legally, financially, or emotionally responsible for any child that results from the artificial insemination procedure.

"* * * * *

"9.     Each party relinquishes and releases any and all rights he or she may have to bring suit to establish paternity.

"* * * * *

"11.     Each party acknowledges and agrees that the relinquishment of all rights, as stated above is final and irrevocable. DONOR further understands that his waivers shall prohibit any action on his part for custody or guardianship in any future situation, including the event of RECIPIENTS'S [*sic*] disability or death. If such event does occur, guardian who is appointed shall be requested to respect the wishes of RECIPIENTS and continue to allow limited visitation rights.

"12. RECIPIENTS agrees [sic] to acknowledge said DONOR as such to said child and anyone else she [sic] may choose. DONOR is also free to identify himself as such to anyone of his choosing, but should not identify himself as "father," but only as sperm donor with limited visitation rights.

"* * * * *

"15. RECIPIENT and her partner * * * are happy to include DONOR in their lives, not as a father, but as a good male role model for both their children."

In October 1987, after the execution of the Agreement, respondent conceived a daughter by artificial insemination. The daughter was born on July 14, 1988. Between July of 1988 and July of 1990, respondent allowed petitioner to visit the daughter and her son at her home. From July 1990 to July 1991, and again from September through December 1991, respondent and her children moved into a house owned by petitioner on land neighboring petitioner's home. During the first of those periods, petitioner saw the children between four and 10 hours a week; during the later period, petitioner visited the children for approximately three hours a week. Throughout this time, petitioner made substantial financial contributions for the daughter's benefit. Both children, on occasion, referred to petitioner as "dad" without objection by respondent.[1]

Disputes arose over petitioner's desire to participate more fully in both children's lives. On December 17, 1991, after several mediation sessions, the parties reaffirmed and re-signed their original Agreement, with the further agreement that petitioner could visit the children six hours per month with no overnight visits. The daughter was then nearly three-and-one-half years old.

Less than six months later, on June 11, 1992, petitioner filed a "Petition to Establish Paternity; Petition for Visitation."[2] The trial court, without reciting its rationale,

---

[1] Petitioner is not the son's biological father.

[2] Petitioner subsequently amended his petition to state a claim for relief under the "psychological parent" statute, ORS 109.119(5). After entering the summary judgment that is the subject of this appeal, the trial court entered a judgment of dismissal of petitioner's "psychological parent" claim. That disposition is not contested on appeal.

entered summary judgment against petitioner's filiation claim.

Summary judgment was proper. The uncontroverted facts establish that petitioner expressly and effectively waived any entitlement to assert parental rights, including prosecution of a filiation claim under ORS 109.125.

Petitioner attempts to avoid his explicit waiver by arguing that the parties' conduct after the daughter's birth implicitly modified the Agreement, vitiating the waiver. However, petitioner failed to proffer any evidence of conduct legally sufficient to vitiate his waiver. In particular, he presented no evidence of the parties' conduct after the parties reaffirmed their Agreement on December 17, 1991.[3]

Affirmed.

---

[3] Because our disposition rests on petitioner's contractual waiver, rather than ORS 109.239, we need not reach petitioner's contention that, under *McIntyre v. Crouch*, 98 Or App 462, 780 P2d 239, *rev den* 308 Or 593 (1989), any application of ORS 109.239 to bar his filiation claim would be unconstitutional.

*McIntyre v. Crouch, supra*, did not present the same waiver issue addressed here. In *McIntyre*, the petitioner pleaded that he donated his semen in reliance on an agreement that he "would remain active" in the child's life and would "participate in all important decisions concerning the child." 98 Or App at 464.